REDMANN, Judge.
The cast defendants appeal from judgments on jury verdicts for personal injuries in consolidated cases. Plaintiffs appeal seeking to hold other defendants and to increase quantum.
The injuries resulted from an automobile accident which occurred at 7 p. m. December 4, 1967, on the then two-lane Lake Pontchartrain Causeway. Driver Brown, braking to avoid collision wih defendant Ginart’s stopped car, swerved into and stopped sideways in the oncoming lane, resulting in collision with a car driven by Denoux. The principal factual question is whether Ginart had stopped (to change a flat tire) too close to a 33' hump (for boat clearance) in the causeway, creating a trap invisible to drivers following him over the hump, and thus negligently caused or concurred in causing the accident.
The net result of procedures employed (none here at issue) is that damages were demanded by: (1) the Agnellos (Denoux’s passengers), from Denoux, Brown and Ginart and their respective insurers; (2) Denoux, from Brown and Ginart and their *540 insurers; (3) Mrs. Brown (Brown’s passenger), from the three insurers.
The jury in special findings unanimously held Brown alone negligent and the cause of the injuries, assessed at $15,000 for Ann Agnello, $300 for Mary Agnello, $1,000 for Denoux, and $20,000 for Mrs. Brown.
Considering Allstate’s $5,000/$10,000 limits, Mrs. Brown’s verdict, greater than the sum of the others, resulted in judgment against Allstate limited only by the $5,000 per person limit. Separate judgment apportioned the other $5,000 of the total limit among the Agnellos and Denoux against Brown and Allstate in solido and cast Brown for the balance of the verdict.
Allstate and Brown ask exoneration, charging Ginart’s stopping too near to the causeway hump created an invisible and unexpected obstruction which suddenly confronted Brown with an emergency to which his reaction was not negligent.
Mrs. Brown, the Agnellos and Denoux each seek to hold Ginart and his insurer as also solidarily liable, and they each ask increase in quantum.

Liability

On liability the determinative factual question is where Ginart stopped his car. If he were stopped too near the crest of the hump, an overtaking driver travelling at the 60 mph speed limit would indeed have faced an emergency, and a panic stop might have caused swerving into the left lane without culpability on the overtaking driver. But there was no evidence Ginart stopped on the incline.
Some appellants misconstrue the investigating state trooper’s testimony that the “collision scene” (not Ginart’s car) “If I’m not mistaken, * * * was close to the bottom of the hump which would be just fairly well up on the incline.” The incline was about a tenth of a mile long. The trooper testified however, that his report showed the accident happened “where the causeway was straight and level” and that the report in general was more accurate than his memory, since he had very little independent recollection. The trooper further testified that his original handwritten report at the scene listed Ginart as a witness and immediately under his name contained the notation “300' away”. The trooper had no recollection of why he had made that notation in the first place nor why he subsequently scratched it out.
Ginart’s testimony was that, travelling 60 mph, he felt vibration at the top of the hump and coasted to a stop, not using his brakes at all. His testimony as a whole is to the effect he travelled some distance, “maybe as much as a half mile,” stopping well beyond the end of the yellow no-passing line for oncoming traffic, “at least four or five car lengths.” He said the accident occurred “at least three, maybe more” car lengths to his rear, the distance being such he was “quite tired” running to it and back to his own car for towels for bandages. The trooper testified the yellow line ran two or three tenths miles from the hump crest; he contradicted Ginart’s assertion he was stopped past the line, but this contradiction is somewhat weakened by his testimony of his “300' away” original notation under Ginart’s name. The same may be said for the trooper’s testimony that Ginart’s car was so close to the accident that later traffic had to cut sharply around it to clear the wreck.
Our review of the record does not enable us to say the jury erred in rejecting the view that Ginart negligently stopped too close to the hump and thereby caused or contributed to the accident. Nor can we reverse their holding of negligence on Brown’s part by theorizing he encountered a sudden emergency. By his own testimony (Ginart “was slightly out on the level” of the causeway), Brown had over a tenth of a mile to stop. From other testimony the jury might have concluded he had two or three tenths of a mile from humpcrest to Ginart’s car in which to stop safely. The *541 jury’s evident conclusion was that Brown was negligent in not safely stopping his car in his own lane within the distance available. We cannot say the jury erred in that conclusion.
Appellants also argue that, as a matter of law, Ginart was negligent by violating the requirement of R.S. 32:141, subd. B that, when a vehicle is unavoidably stopped in the travelled portion of a highway, it is the driver’s “responsibility to protect traffic.” But subsec. C specifies that the driver of any vehicle parked on a highway “shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.” We construe the appropriate lighting to constitute discharge of the responsibility to protect traffic. Ginart’s lights were on, including the left rear tail light alone required by R.S. 32:314, subd. B, pars (2) and (3). Ordinary passenger cars are not included in the terms of R.S. 32:368-9’s flares or flags requirements.

Quantum

Denoux suffered a laceration through his upper lip and contusions of his chest and knee. Also possibly attributable to the accident were a rash on his forehead and anxiety. Special damages were $200 lost wages and $58 medical. The total award of $1,000 was not inadequate.
Mary Agnello had multiple bruises and “probably” some muscle strain, in the head, neck and left leg. X-rays showed no evidence of fracture or other injury and no treatment was indicated. Stipulated medical was $185 and total award was $300. While $115 for her pain and suffering appears a minimal award, we cannot hold it a manifest abuse of the jury’s great discretion under C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
Ann Agnello suffered severe facial laceration, her nose and both cheeks being torn upward revealing the lower rim of both eye sockets. Because of severe bleeding, requiring seven pints of blood in 48 hours, definitive plastic repair was not possible at first and corrective surgery had to be performed later. Further minor correction is still advisable for maximum cosmetic improvement. Her nose was broken, necessitating repair in the second surgery. Her wrist was fractured and had to be immobilized in a cast. X-rays showed sternum depression indicating possible fracture. She had evident deformity of nose and facial scars for the nine months preceding the second surgery, and the usual swelling and discoloration following nasal surgery. Her special damages included $3,800 stipulated past medical and possibly $300 future medical expense, and loss of income between $1,000 and $2,000. Her total $15,000 award thus allowed general damages of $9,000 or $10,000. This amount may also be viewed as low, but again we cannot say the jury transgressed the lower limit of its discretion.
Mrs. Brown’s injuries were the most severe and complex, and plainly justify the jury’s evaluation of $20,000. We need not inquire whether that amount was inadequate, since she receives policy limits from the only defendant held liable to her.
The judgments are affirmed.